IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TYLOR MORRIS<br>717 N. Maple Street<br>Lancaster, Ohio, 43130 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| SIDWELL MATERIALS, INC.<br>4200 Maysville Pike<br>Zanesville, Ohio, 43701 | )<br>)<br>)<br>) | (Jury Demand Endorsed Herein) |
| **Serve also:**<br>Jefferey R. Sidwell<br>Statutory Agent<br>5240 Wortman Rd.<br>Zanesville, OH 43701 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| DRAKE PROUTY<br>4200 Maysville Pike,<br>Zanesville, Ohio, 43701 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff Tylor Morris, by and through undersigned counsel, as his Complaint against

Defendants, states and avers the following:

**PARTIES.**

1. Morris is an individual residing in Lancaster County, Ohio.

2. Sidwell Materials, Inc. ("Sidwell") is an Ohio limited liability corporation who maintains its principal place of business in Muskingum County, Ohio.

3. Prouty is an individual who, upon information and belief, resides in Muskingum County, Ohio.

**PERSONAL JURISDICTION.**

4.  Sidwell is an Ohio Corporation; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Sidwell comports with due process.

5.  Prouty is an Ohio citizen; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Sidwell comports with due process.

**SUBJECT MATTER JURISDICTION AND VENUE.**

6.  This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

7.  This Court has supplemental jurisdiction over Morris's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from the same set of facts and circumstances as Plaintiff's FLSA claims, specifically the employment relationship between Morris and Sidwell, and are so related to Morris's FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.  Venue is proper in this District because Defendants do a sizeable portion of their business in this District; their principal place of business is located in this district; and the wrongs herein alleged occurred and/or originated in this District.

**FLSA COVERAGE.**

9.  At all times referenced herein, Sidwell formed an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

2

10. At all times referenced herein, Morris's job duties required him to perform tasks involving interstate commerce.

11. At all times relevant herein, Defendants were Morris's "employer" within the meaning of 29 U.S.C. § 203(d).

### OMFWSA COVERAGE.

12. At all times referenced herein, Defendants were Morris's "employer," as that term is defined by Article II, Sec. 34a of the Ohio Constitution.

13. At all times referenced herein, Defendants were required to pay Morris at least the minimum wage for all hours worked.

### FACTUAL ALLEGATIONS.

14. Sidwell Materials Inc. is a corporation headquartered in Zanesville, Ohio, that owns and operates one sand and gravel quarry, Midvale Sand & Gravel, located in New Philadelphia, Ohio, and five limestone quarries, including Uniontown Stone in St. Clairsville, Ohio, Standing Stone in Cadiz, Ohio, and Blaine Aggregates in St. Clairsville, Ohio. Sidwell Materials Inc. also operates an EPA-licensed landfill in Zanesville, Ohio, and a tire store, Southeast Tire, located in South Zanesville, Ohio. In addition to these operations, Sidwell Materials Inc. provides contract stripping and crushing services throughout the State of Ohio.

15. Morris is a former employee of Sidwell.

16. Morris began his employment with Sidwell in or around August of 2024.

17. Morris worked for Sidwell as a "Lube Technician."

18. As a Lube Technician, Morris was responsible for greasing equipment and changing equipment oil.

19. Sidwell promised to pay Morris $33.00 per hour for his work.

20. Sidwell also promised to pay Morris holiday pay on certain holidays, such as Thanksgiving, Christmas, and New Years.

21. During most of Morris employment, Sidwell paid him as agreed.

22. Sidwell also paid Morris overtime when he worked more than 40 hours in a single work week.

23. At all times referenced herein, Morris was paid on a biweekly basis, every other Friday.

24. During the week of December 16, 2024, Morris worked 45.5 hours.

25. Morris was paid as normal on December 20, 2024 for the hours he worked between December 1, 2024 and December 14, 2024.

26. On December 23, 2024, Morris worked 11.5 hours.

27. On December 26, 2024, Morris worked 7.5 hours.

28. Morris was entitled to 8 hours of holiday pay for Christmas day, December 25, 2024.

29. After the conclusion of his shift on December 26, 2024, Morris resigned from his employment with Sidwell.

30. At the time of his resignation, Morris was owed wages for 69 hours of regular pay; 8 hours of holiday pay; and 5.5 hours of overtime.

31. Morris was paid again on January 3, 2025.

32. Morris' final paycheck only included pay for the hours he worked during the week of December 16, 2024.

33. Sidwell did not pay Morris any wages at all for the hours he worked during the week of December 23, 2024, nor any holiday pay.

34. Subsequently, Morris reached out to Prouty, Sidwell's Human Resources manager.

35. Prouty acknowledged that Sidwell had withheld Morris pay and demanded that Morris return company issued uniforms to get paid what he was owed.

36. Sidwell and Prouty's withholding of Morris' wages as a means of coercing him to return uniforms was unlawful.

37. An employer may not lawfully require an employee to pay for an expense of the employer's business if doing so reduces the employee's pay below the statutorily-required minimum wage or overtime premium that is due, because employers must pay

all statutorily-required minimum wages and overtime premiums finally and unconditionally, or "free and clear."  29 C.F.R. § 531.35.

38. A few days later, Morris returned the uniforms.

39. Despite Morris' returning the uniforms, Defendants have failed to pay him the wages and holiday pay he is owed.

40. Defendants' withholding of Morris' wages was a knowing, deliberate, and intentional act.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.
### (Asserted Against All Defendants).

41. Morris re-alleges and incorporates by reference the allegations set forth in paragraphs 1-40, above.

42. The FLSA requires each covered employer, such as Sidwell, to pay all non-exempt employees at least the minimum wage for all hours worked.

43. Throughout his employment with Sidwell, Morris was non-exempt from the minimum wage and overtime requirements of the FLSA.

44. Defendants failed to pay Morris at least the minimum wage for the hours he worked during the week of December 23, 2024.

45. Defendants decision to withhold the pay Morris earned during the week of December 23, 2024 was intentional, deliberate, calculated, and willful.

46. In stealing wages from Morris, Defendants acted without a good faith belief that their conduct conformed with the legal requirements of the FLSA.

47. Morris is entitled to all legal and equitable remedies available for Defendants violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGES STANDARDS ACT.
### (Asserted Against All Defendants).

5

48. Morris re-alleges and incorporates by reference the allegations set forth in paragraphs 1- 48, above.

49. In 2024, the OMFWSA required employers to pay a minimum wage of at least $10.45 per hour to all non-exempt employees.

50. In denying Morris compensation at the requisite Ohio minimum wage rate, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

51. As a direct and proximate result of Defendants' unlawful conduct, Morris has suffered and will continue to suffer a loss of income and other damages.

52. Having violated the OMFWSA, Defendants are liable to Morris for the full amount of his unpaid minimum wages, exemplary damages, and for his costs and reasonable attorneys' fees.

### COUNT III: VIOLATION OF THE OHIO PROMPT PAY ACT.
### (Asserted Against Sidwell Only).

53. Morris re-alleges and incorporates by reference the allegations set forth in paragraphs 1-52, above.

54. During all times material to this complaint, Sidwell was an entity covered by the OPPA; and Morris was employed by Sidwell within the meaning of OPPA.

55. The OPPA required that Sidwell pay Morris all wages, including unpaid minimum wage and overtime, on or before the first day of each month, for wages earned by Morris during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of the month, for wages earned by Morris during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

56. During all times material to this complaint, Morris was not paid the wage to which he was entitled within 30 days of performing the work. *See* O.R.C.§ 4113.15(B).

57. In violating the OPPA, Sidwell acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

### COUNT IV: BREACH OF IMPLIED CONTRACT.
### (Asserted Against Sidwell Only).

58.  Morris re-alleges and incorporates by reference the allegations set forth in paragraphs 1-57, above.

59.  Sidwell offered to pay Morris $33.00 per hour to perform work for it as a Lube Tech and to pay him holiday pay for certain days, such as Christmas.

60.  Morris accepted Sidwell's offer.

61.  Morris' performance of work for Sidwell constituted acceptance of Sidwell's offer of employment.

62.  Initially, Morris was paid as agreed.

63.  Morris was also paid for other holidays, such as Thanksgiving.

64.  Sidwell's failure to pay Morris at the rate of $33.00 per hour for work he performed during the week of December 23, 2024 constitutes a breach of implied contract.

65.  Sidwell's failure to pay Morris holiday pay for Christmas, December 25, 2024, constitutes a breach of implied contract.

66.  As a direct and proximate cause of Sidwell's wrongful conduct, Morris suffered and will continue to suffer damages.

### COUNT V: PROMISSORY ESTOPPEL.
### (Asserted Against Sidwell Only).

67.  Morris re-alleges and incorporates by reference the allegations set forth in paragraphs 1-66, above.

68.  Sidwell represented to Morris that he would be paid, on an hourly basis, $33.00 per hour.

69.  Sidwell also promised Morris holiday pay.

70.  Morris relied on Sidwell's representations.

71.  It was reasonable for Morris to rely on Sidwell's representations.

72.  Morris's reliance on Sidwell's representations caused him to accept employment with Sidwell.

73. Sidwell did not compensate Morris for the work he performed during the week of December 23, 2024.

74. Sidwell did not pay Morris holiday pay for Christmas, December 25, 2024.

75. Morris's reliance on Sidwell's representations was detrimental to Morris.

76. The detriment to Morris included, but was not limited to lost wages and lost opportunities to work elsewhere that would pay him as agreed.

77. As a direct and proximate cause of Sidwell' wrongful conduct, Morris suffered and will continue to suffer damages and injustice can be avoided only by enforcing the promise Sidwell made to Morris.

### COUNT VI: UNJUST ENRICHMENT/QUANTUM MERUIT
### (Asserted Against Sidwell Only).

78. Morris re-alleges and incorporates by reference the allegations set forth in paragraphs 1-76, above.

79. Morris, in working during the week of December 23, 2024, conferred a benefit on Sidwell.

80. Sidwell was aware that Morris worked during the week of December 23, 2024 when it refused to pay him.

81. Sidwell benefited from the work Morris performed during the week of December 23, 2024

82. Morris suffered a detriment as a result of his working during the week of December 23, 2024 without pay.

83. It would be unjust to allow Sidwell to retain the benefit provided by Morris' work without compensation being paid to Morris.

84. Morris is entitled to either the value of his services, or the amount Sidwell benefitted from the work he performed during the week of December 23, 2024.

### PRAYER FOR RELIEF.

WHEREFORE, Plaintiff Tylor Morris prays for judgment in his favor against Defendant Sidwell Materials, Inc. and Drake Prouty, containing the following relief:

(a) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

(b) An award, against Defendants joint and severally, for Morris's unpaid minimum wages;

(c) An award, against Defendants joint and severally, of liquidated damages under the FLSA;

(d) An award, against Defendants joint and severally, of exemplary damages on Morris's claim for unpaid minimum wages under the OMFWSA;

(e) Against Sidwell only, an award of statutory damages pursuant to Ohio R.C. § 4113.15;

(f) Against Sidwell only, an award of compensatory damages and equitable relief on Counts IV, V, and VI;

(g) An award of prejudgment and post judgment interest;

(h) An award of reasonable attorney's fees, as well as the taxable costs of this action; and

(i) An award of such other relief as this Court may deem necessary and proper.


Respectfully submitted,

/s/Chris P. Wido
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
3 Summit Park Drive, Suite 200
Independence, Ohio 44131
Phone: (216) 364-1330
Fax:    (216) 291-5744
Email:  Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiff Tylor Morris*


## JURY DEMAND

Plaintiff Tylor Morris demands a trial by jury by the maximum number of jurors permitted.


/s/Chris P. Wido
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**